**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: June 20, 2018**

Hon. Catherine J. Furay
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF WISCONSIN

In Re:                                          In Bankruptcy No:

**SCHROEDER BROTHERS FARMS**
**OF CAMP DOUGLAS LLP**

Debtor/Debtor in Possession        Case No: 16-13719 (CJF)(Chapter 11)

### ORDER CONFIRMING AMENDED CHAPTER 11 PLAN DATED MARCH 31, 2018
### AND FILED APRIL 3, 2018 AS AMENDED IN COURT

The Amended Plan under the Chapter 11 of the Bankruptcy Code having been filed by Schroeder Brothers Farms of Camp Douglas LLP, debtor/debtor in possession on April 3, 2018 having been amended in the Court proceedings as set forth below and the Disclosure Statement having been approved by the Court on May 14, 2018 (Doc. #175) and it having been determined after Notice and a Hearing that the requirements for final approval of the Disclosure Statement having been satisfied and having been determined after hearing on notice that the requirements for the confirmation of the Amended Chapter 11 Plan under 11 U.S.C. § 1129 have been satisfied and the Objection to the Plan (Doc. #182) by the U.S. Trustee having been withdrawn.

The following provisions in the Court proceedings on June 6, 2018 modified the Amended Plan as follows:

A.    Para. 9 of Article XIII – Liquidation Provision.

The Committee shall continue in existence as a post-confirmation reconstituted committee, and shall perform the duties of the Committee as set forth in hit Liquidation Provision.   The post-confirmation reconstituted committee is authorized to retain its current counsel for the Committee as provided in the Order approving employment of said counsel (Docket #37), and said counsel may apply to the Court for compensation as set forth in that Order.   The post-confirmation reconstituted committee shall be dissolved upon the earlier of (a) entry of an order appointing a Liquidating Trustee, (b) the Debtor's completion of 24 monthly payments under the Plan, or (c) any order of the Court which provides for dissolution of the reconstituted committee.

If a Motion is filed for an appointment of a Liquidating Trustee pursuant to the Chapter 11 Plan, a Liquidating Trustee shall be nominated by the moving party and any dispute regarding the Liquidating Trustee shall be resolved by the Court.

B.    Article III – Classification of Claims and Interests

J. Class X DLL is deleted from the Plan.  DLL has requested and received Order Lifting the Stay pursuant to a Stipulation on file with Court (Doc. #178/180) and DLL is no longer a part of the Chapter 11 Plan and proceedings.

C.    Article IV – Reorganization

Class X DLL Finance

DLL Finance is deleted from the Plan.  DLL has requested and received Order Lifting the Stay pursuant to a Stipulation on file with Court (Doc. #178/180) and DLL is no longer a part of the Chapter 11 Plan and proceedings.

D.    Article XV

All payments due under the Plan shall commence July 30, 2018. This replaces the current paragraph under Article XV.

E.    Recap

Monthly

The Summary/Recap of monthly payments is revised to remove DLL Finance $3,436.35 from the Plan.

**IT IS ORDERED AS FOLLOWS:**

1.    The Amended Plan filed by Schroeder Brothers Farms of Camp Douglas LLP dated March 31, 2018 and filed on April 3, 2018 is hereby confirmed with the incorporation of all the modifications set forth in this Order. A copy of the Plan is Attached.

###

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

In Re:                                      In Bankruptcy No:

**SCHROEDER BROTHERS FARMS**
**OF CAMP DOUGLAS LLP**

    **Debtor/Debtor in Possession**          **Case No:  16-13719 (CJF)(Chapter 11)**

## AMENDED DEBTOR-IN-POSSESSION'S
## PLAN OF REORGANIZATION
## MARCH 31, 2018

The Debtors propose the following Plan of Organization:

## ARTICLE I.  INTRODUCTION

The Debtors' Plan of Reorganization is filed in conjunction with the Disclosure Statement

to the Creditors.  However, the Chapter 11 Plan of Reorganization is more complete and in

detail.

## ARTICLE II.  DEFINITIONS

    A.    All terms employed herein shall have the meanings set forth in the United States

Bankruptcy Code, (11 USC section 101 et seq.) unless specifically defined to the contrary herein.

    B.    When used herein, the words set forth below shall have the following meanings,

except to the extent the context otherwise unambiguously requires:

        1.    "Administrative Expense Claim" shall mean claims pursuant to 11 U.S.C.,

Section 503, accruing from and after the date on which this Chapter 11 case commenced,

including fees and expenses of professional persons retained or to be compensated pursuant to

1

the Code, all fees of the Committee, the Representative and Disbursing Agents, and fees due the

United States Trustee imposed by 28 USC, Section 1930.

      2.    "Allowed Claim" shall mean a claim which has been scheduled pursuant

to 11 U.S.C., Section 521(1), other than a claim scheduled as disputed, contingent or

unliquidated, or which has been timely filed pursuant to 11 U.S.C., Section 501(a), and, in either

instance, with respect to which no objection to the allowance thereof has been made within the

period of limitation set forth in this Plan, or which has been approved and fixed in an amount and

nature by order of the Court pursuant to 11 USC, Section 502, 503 and 507.

      3.    "Cash Proceeds" shall mean any and all monies received by the Debtor, its

employees, officers, directors, shareholders, agents and assigns and the escrowee from the

operation, liquidation, sale or realization of any asset of the Debtor, which monies shall be

deposited, and together with any interest earned thereupon, administered and distributed, in

accordance with the provisions of this Plan.

      4.    "Claim" shall mean any secured claim, an unsecured claim, an

administrative expense claim and/or a priority claim in these proceedings filed by the holder of

such claim or, if not so filed, as scheduled by the Debtor herein.

      5.    "Claimant" shall mean the holder of any claim.

      6.    "Code" and "Bankruptcy Code" shall mean 11 U.S.C., Section 101, et.

seq.

      7.    "Committee" shall mean the Official Creditors' Committee appointed in

this case by the prior Order of this Court.

      8.    "Confirmation Date" shall mean both the event and the date of entry by

this Court of an Order confirming this Plan in accordance with Section 1129 of the Code.

2

9.    "Court" means the Bankruptcy Court for the Western District of Wisconsin, at Eau Claire, Wisconsin.

10.    "Creditors' Fund" shall mean all sums of money now or hereinafter held in escrow by the escrowee for the benefit of all unsecured claimants, which monies shall be deposited, together with any interest earned thereupon, and administered in accordance with the provision of this Plan, for the benefit of all unsecured claimants.

11.    "Debtor" shall mean Schroeder Brothers Farms of Camp Douglas, LLP which it has been known or in which it has been operated and all its lawful successors or assigns.

12.    "Disputed Claim" shall mean any claim as to which an objection to the allowance thereof has been interposed and not determined by a final order.

13.    "Dividend" shall mean any distribution by the escrowee of a payment upon any claim.  "First Dividend" shall mean the first of such payments and "Final Dividend" shall mean the last of such payments.

14.    "Effective Date" shall be the thirtieth (30th) day following entry of Order of Confirmation.

15.    "Filing Date" shall mean November 2, 2017, the date upon which the Chapter 11 was filed.

16.    "Final Consummation" shall occur when the escrowee has made or tendered all performance due under this Plan and paid over all sums in the escrow account to the creditors' fund, and the escrowee has paid or tendered all dividends and performance due under this Plan and each has made a final accounting herein to the Committee and the Court which accounting has been approved by Order of this Court.

3

17.    "Interests" shall mean the allowed interest of all (a) holders of stock in the Debtor, (b) holders of bonds of the Debtor, and all holders of option, warrants and similar instruments for the acquisition of the Debtor's stock, and (c) persons who constitute "equity security holders" within the meaning of Code Section 101(16) arising from the equity securities of the Debtor as defined in Section 101(15) which have been scheduled by the Debtor or have timely filed a proof of interest herein.

18.    "Order" shall mean an order or judgment which has not been reversed or stayed and as to which the time to appeal or to seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending and which is not the subject to an application for certiorari.

19.    "Plan" shall mean this Plan of Reorganization, as the same may be further modified, amended or supplemented.

20.    "Post Proponents" shall mean the Committee and the Debtor.

21.    "Post-Petition Financing" shall mean all financing obtained by the Committee, if any, upon notice and hearing, after confirmation, whether secured or unsecured, regardless of the form thereof.

22.    "Preference" shall mean any payment, conveyance or other transfer of the Debtor that may be avoided as provided for and defined in Section 547 of the Code or under section 544 and the laws of the State of Wisconsin.

23.    "Priority Claims" shall mean the portion of an allowed claim entitled to priority under 11 U.S.C., Section 507(a)(1) through and including 507(a)(8).

24.    "Pro Rata" shall mean the same proportion that an allowed claim in a particular class bears to the aggregate amount of all claims in that class.

4

25.    "Rules" or "Rule" shall mean the Bankruptcy Rules promulgated by the Supreme Court of the United States, as the same may be amended.

26.    "Secured Claimant" shall mean the holder of a secured claim.

27.    "Secured Claim" shall mean any allowed claim, which is secured by a valid, perfected and enforceable lien on property of the Debtor, to the extent of the value of the interest of the holder of such allowed claim in such property of the Debtor as determined by the Court pursuant to the 11 U.S.C., Section 506(a), the amount of which secured claim and the value of which collateral have been fixed either by Order of the Court or settlement approved by the Court Order to the extent of any deficiency in the value of the interest of the holder of the secured claim in such property, such deficiency shall be treated as an unsecured claim.

28.    "Settlement Offer" shall mean (a) any offer of settlement or compromise, or offer to purchase any outstanding unsecured claim or the interest of any claimant under this Plan, or (b) any compromise or agreement to otherwise effectuate any full or partial satisfaction of any unsecured claim outside the terms of this Plan.

29.    "Stock" shall mean the instruments evidencing all interest held by holders of all interest in the Debtor.

30.    "Transfer" shall mean any payment, conveyance or other transfer by the Debtor that may be set aside as provided for and defined in Sections of the Code other than 11 U.S.C., Section 547 or under the laws of the State of Wisconsin and Section 544 of the Code.

31.    "Transfer" shall mean any payment, conveyance or other transfer by the Debtor that may be set aside as provided for a defined in Sections of the Code other than 11 U.S.C., Section 547, or under the laws of the State of Wisconsin and Section 544 of the Code.

32.    "Unsecured Claim" shall mean an allowed claim which is not entitled to priority under 11 U.S.C., Section 507(a), or where the claimant does not hold a valid, perfected and enforceable lien or security interest as defined in 11 U.S.C., Section 101(37) and (51); provided however, that interest and other charges accruing, arising or imposed after the filing date, if any, shall not be part of an unsecured claim.

## ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Code Section 1123(a)(1), the Plan shall treat the following Classes of claims and interests in the following manner:

A.    Class I.        This Class shall be composed of allowed administrative expense claims, which are entitled to priority pursuant to Code Section 503(b) and 507(d).

B.    Class II.        This Class shall consist of all allowed priority claims which are entitled to priority pursuant to Code Section 507(a)(3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.

C.    Class III.    BMO Harris Bank NA

D.    Class IV.    Cooperative Credit Company

E.    Class V.    Stearns Bank/EFD

F.    Class VI.    Stearns Bank/EFD

G.    Class VII.    Stearns Bank/EFD

H.    Class VIII.    Stearns Bank/EFD

I.    Class IX.    Stearns Bank/EFD

J.    Class X.    DLL Finance

K.    CLASS XI.    Agri-Credit

L.    Class XII.    Unsecured Creditors

6

## ARTICLE IV.  REORGANIZATION PLAN

The Debtors' Plan will consist of the following aspects:

1.    Schroeder Brothers Farms of Camp Douglas, LLP are proposing an organized plan funded by deferred cash payments supported through the farm business.

2.    The balance of the plan will be paid off in monthly/Annual payments.

## ARTICLE V.  TREATMENT OF CLAIMS

### CLASS I - ADMINISTRATIVE EXPENSE CLAIMS:

Class I claims consist of all claims granted administrative expense priority status by virtue of the Bankruptcy Code, Section 503(d) and 507(a)(1).  Administrative expense claim are the expenses of administration of the Chapter 11 case consisting primarily fees and expenses of professional persons, etc. (lawyers, accountants, and consultants) retained pursuant to a Bankruptcy Court Order and certain unpaid obligations of the Debtors Including liabilities Incurred in the ordinary course of the Debtors operation during the administration of a Chapter 11 case.  Administrative expense claims, to the extent they are allowed, will be paid in full in cash or as agreed upon within ninety (90) days of the confirmation of the Chapter 11 Plan by the Court or pursuant to the Agreement set forth below. The administrative claims are as follows:

A)    Pittman & Pittman Law Offices, LLC (Estimated fees/disbursements - $75,000.00)
Paid at rate of $1,500.00 per month.

### CLASS II – PRIORITY/TAX CLAIMS:

Tax claims include any claim held by a Federal, State, or Local Government units which are entitled to a priority payment under the Bankruptcy Code Section 507(a)(8).  Each holder of a Class II allowed claim will receive in full satisfaction thereof cash equal to the Allowed Claim of such tax claim subject to the Allowed Claim and within the time frame required by 1129(a)(9)(c). There are no priority claims.

Class III.    BMO Harris Bank  N.A.
c/o Atty. Ann Ustad Smith
Michael Best & Friedrich LLP
Post Office Box 1806
Madison, WI 53701-1806

7

This secured claim is in the approximate amount of $2,701,885.53 as of September 5, 2017:

| Acct. # | Principal | Interest | Per Diem | Total |
|---|---|---|---|---|
| *0058 | $152,688.68 | $275.68 | $21.2067611 | $152,964.36 |
| *0059 | $440,621.48 | $641.43 | $49.3713920 | $441,262.91 |
| *0060 | $1,567,269.82 | $2,829.79 | $217.6763638 | $1,570,099.61 |
| *7814 | $528,905.98 | $954.97 | $73.4591638 | $529,860.95 |
| *1635 | $7,674.50 | $23.20 | $0.8599234 | $7,697.70 |
| | | | TOTAL DUE | $2,701,885.53 |

plus interest accrual, less interest payments made (Adequate Protection) plus attorney's fees. Without knowing that exact amount, the debtor proposes to pay the secured claim (secured by real estate and personal property) at an interest rate of 6.5% per annum, with payments amortized over a 25-year period, resulting in aggregate monthly payments of about $18,243.33, with a balloon payment at the end of five (5) years after entry of the plan confirmation order. The monthly payments will be adjusted as soon as the exact computation of the amount that's due and owing as set forth in this paragraph is determined.

The obligations to BMO will be evidenced by two notes. Current note/account 0059 (which is an FSA-guaranteed obligation) will remain outstanding. The remaining notes/accounts, 0058, 0060, 7814 and 1635, shall be combined into one amended, restated and consolidated note. All the notes/accounts (0058, 0059, 0060, 7814 and 1635) are incorporated in this restructuring/reamortization and are modified herein but all the other provisions of the contracts apply except as modified. BMO Harris Bank N.A. ("BMO") retains its real estate mortgages, and security agreements and chattel liens on all the property (real estate and personal property such as equipment, cows, etc.) until the

8

obligations to BMO are paid in full. At the Bank's request, borrower will sign and deliver

to BMO updated loan documents to reflect the terms of this Plan.

**Estimate Monthly Payment $18,243.33**

Class IV.        Cooperative Credit Company
c/o Stephen D. Chiquoine
118 Main Street
Post Office Box 399
Reedsburg, WI 53959

The secured claim is in the approximate amount of $565,466.49 as of March 16, 2017.

This claim will be adjusted as a result of accrual of interest, payments made and attorney's fees

added thereto. Until that occurs, the estimated amount of the claim will be amortized over 25

years at the contract rate of 6.89% with monthly payments in the amount of $3,657.01, except

that this loan will come due and payable in full 7 years from date of Confirmation Order. This

will be adjusted pursuant to the true claim as filed by the secured creditor. All the provisions of

the contract apply except as modified with this Plan. Cooperative Credit Company retains its

secured lien (real estate mortgage) and Chattel liens on all the property until all the obligations

are paid in full.

**Monthly Payment $3,657.01**

Class V.        Stearns Bank/EFD
Post Office Box 750
Albany, MN 56307

This secured claim on a used Kuhn Nigh 80141 Slinger spreader, serial number D0032, a used
Gehl 170 Mixall Grinder, serial number 9587 and a used 1979 John Deere 8440 Tractor, serial
number 01916 and any attachments thereto is in the amount of $22,823.04. This lease under this
Plan is being converted to a Purchase Money Mortgage and shall be paid at the rate of 8% per
annum with monthly payments amortized over 60 months with monthly payments in the amount
of $462.77. All provisions of the contract apply except as modified by this Plan. Stearns Bank
retains it chattel liens on all its property until the claim is paid in full.

**Monthly Payment $462.77**

9

**CLASS VI –** Stearns Bank
Post Office Box 750
Albany, MN 56307

This secured claim on the equipment a used John Deere 1560 20 ft. Grain Drill, serial number N01560X690852, with Yetter marker, serial number 6150-017-HD and a John Deere Grass Seeder, serial number BN280486 and a BN280487 in the amount of $12,027.22. This true lease under this Plain is being converted to a Purchase Money Mortgage and shall be amortized over 60 months at the rate of 7.9% per annum with monthly payments in the amount of $243.35. Stearns Bank retains it Chattel liens on all of its property until the claim is paid in full.

**Monthly Payment $243.35**

**CLASS VII-** Stearns Bank
Post Office Box 750
Albany, MN 56307

This secured claim on equipment, a 4 Goodyear 620-7016 Tires, 2 Trelle Borg TM 60052185R16 tires, 1 2016 Vermeer 2800, LLAYRAKE hay rake, serial number 14008, 4 All-weather 281.26 tires are in the amount of $41,359.72. This shall bear interest at 10.0% with monthly payments of $1,192.46. Stearns Bank retains its Chattel lien on all of its property until this claim is paid in full.

**Monthly Payment $1,192.46**

**CLASS VIII-** Stearns Bank
Post Office Box 750
Albany, MN 56307

This secured claim is in the amount of $8,366.63 on a 13 Smidley 9150142 Drink Hog Bar and a Smidley 706526X8 Hog House, serial number unknown with attachments thereto with an interest rate of 10.63% and a monthly payment of $268.47. Stearns Bank retains it Chattel lien on all of its property until this claim is paid in full.

**Monthly Payment $268.47**

**CLASS IX –** Stearns Bank
Post Office Box 750
Albany, MN 56307

This secured claim is in the amount of $73,410.36 at the rate of 6.01% on 1 Sushi street 1000 Combine tractor 7032 inch, a 1993 John Deere 96 Combine serial number 809600X651930 with any and all attachments and amortized over 60 months with monthly payments of $1,419.57. Stearns Bank retains its Chattel lien on all the equipment until the lien is paid in full.

10

**Monthly Payment $1,419.57**

**CLASS X -    DLL Finance**
Post Office Box 2000
Johnson, IA  50131-00200

This secured claim is composed of two elements, the first relating to a Peterbilt truck, a Knight feeder mixer and a John Deere 81 Tractor, which has an approximate balance due of $51,280.95. This shall be paid at the rate of 5.74% interest in 60 months with payments in the amount of $980.53 per month. This contract of 60 months started June 15, 2017 and continues until paid in full for a period of 60 months.

The secured claim on a John Deere 9360R Tractor, serial number 1RW9360RJDPOO8409 which is in the amount of $150,000.00. This shall be amortized at the rate of 5.74% interest for a period of 72 months with payments in the amount of $2,455.82 beginning June 15, 2017 and continuing until paid in full. This payment again commenced prior to the Plan payment but will be amortized over a period of 60 months from the beginning date. DLL Finance retains its chattel liens on all its property until the obligation is paid in full as set forth in the Plan. All provisions of the contract apply except as modified herein. Also incorporated in this is a Stipulation Agreement with the Court which incorporates in this Plan and all the terms and conditions set forth therein.

**Monthly Payment $3,436.35**

The debtor is in the process of refinancing the homestead and will use such funds to pay off this loan in full or if a partial payment is made, this obligation plan payment shall be adjusted.

**CLASS XI.**    Agri-Credit
n/k/a DLL Finance
Post Office Box 2000
Johnston, IA 50131

This secured claim is in the amount of $17,000.00 with interest @ 6.5% and shall be amortized over 60 months with payments of $327.62. This obligation shall be paid in full pursuant to the refinancing of the homestead. Agri-Credit retains its lien on equipment until paid in full.

Monthly Payment $327.62

Class XII.    Unsecured Creditors

All unsecured creditors who file claims or are set forth in Chapter 11 Schedules and their claims are approved by the Court shall be paid in full over 60 months (5 Years) at 3.0% interest with monthly payments set forth below. The total claims are estimated at $475,673.49.

11

| | | |
|---|---|---|
| 1. | Year one (1) Monthly Payment for 12 months. | $4,593.14 |
| | Year one (1) Annual payment (1 year after 1st payment due | $10,000.00 |
| 2. | Year two (2) Monthly Payments for 12 months. | $4,976.38 |
| | Year two (2) Annual Payment | $20,000.00 |
| 3. | Year three (3) Monthly Payments for 12 months | $5,418.36 |
| | Year three (3) Annual Payment | $30,000.00 |
| 4. | Year four (4) Monthly Payments | $7,896.84 |
| | Annual Payment | $40,000.00 |
| 5. | Year five (5) Monthly Payment | $8,175.86 |
| | Year five (5) Annual Payment | $48,628.75 |

## ARTICLE XIII. LIQUIDATION PROVISION

1. Summary.    This Liquidation Provision is intended to provide an orderly and predictable process for liquidation of the Debtor's assets in the event the Debtor defaults under the Plan within the first 24 months following confirmation. The Provision is intended to protect the interests of all creditors while affording the Debtor a reasonable opportunity to reorganize, and avoid the time and costs which may be involved in litigating plan feasibility and/or the merits of a motion to dismiss the case or appoint a chapter 11 trustee.

2. Delay in Vesting and Discharge.    Notwithstanding any provision in this Plan to the contrary:

    a. the Debtor's discharge of debts pursuant to this Plan, and the vesting of any assets of the estate in the Debtor, shall not be effective unless and until the Debtor has completed 24 months of payments following confirmation of the Plan, as provided and described in this Plan; and

    b. unless otherwise ordered by the Court, this case will remain open for at least 24 months following confirmation of the Plan, after which time the Debtor may apply to the Court for an order administratively closing the case.

3. Debtor's Obligations to Make and Verify Plan Payments.    By the 15th day of each month during the first 24 months of the Plan, the Debtor shall provide to the Committee written verification that the Debtor has made its required monthly and/or annual Plan payments for the preceding month. If the Debtor does not provide complete verification of all payments, or if the verification reflects that the Debtor has not made the full amount of each payment due under the Plan for the preceding month, then the Committee is authorized to provide written notice to the Debtor of any such payment default. In addition, should any creditor or party in interest provide information to the Committee suggesting that a default in the Plan has occurred, the Committee shall notify the Debtor within 7 days of receiving such information, and provide the information received or a summary thereof. Debtor shall then have 30 days from the date of such notice to cure any such default, and provide written verification of the cure to the Committee. If the Debtor does not provide written verification of the cure of the default within 30 days of the date of said notice, the default is grounds for the appointment of a Liquidating Trustee.

4. Appointment of Liquidating Trustee.        Upon a plan default as set forth in Par. 3, the Committee or any party in interest may move the Court for appointment of a Liquidating Trustee, to take possession of all assets of the Debtor and/or bankruptcy estate, to secure, account for, maintain and protect the value of said assets until such time as the assets can be liquidated. Any motion for the appointment of a Liquidating Trustee must state the default or defaults upon which the motion is predicated, and include a declaration, affidavit or other statement regarding the facts of the default. Upon appointment of the Liquidating Trustee, the Debtor shall turn over control and possession of all of the assets of the Debtor and/or bankruptcy estate to the Liquidating Trustee.

5. Powers and Duties of Liquidating Trustee. The Liquidating Trustee shall have the powers of a trustee set forth under § 1107(a), and shall have the duties set forth in §§ 1106(a)(1), 1108, and 704(a)(1). The Liquidating Trustee may seek authority and the approval from the Court to take actions necessary to fulfill the Trustee's duties, including actions pursuant to 11 U.S.C. §§ 327, 363, 364, 542 and 554.

6. Liquidating Trustee's Use of Cash Collateral or Protective Advances. Secured Claimant BMO Harris Bank, N.A., which has liens in substantially all of the Debtor's assets, including cash collateral of the Debtor, is authorized but not required to allow the Liquidating Trustee to use its cash collateral or make advances of funds to the Liquidating Trustee so that the Liquidating Trustee may carry out the duties set forth herein. Any funds so advanced shall be added to the balance owed BMO, and shall be treated and paid as part of BMO's restated and consolidated note as set forth in the treatment of BMO's Class III claims, in Article V herein.

7. Final Accounting, Distribution and Case Closure. After the Liquidating Trustee has liquidated or abandoned all assets of the estate, the Trustee shall compile and seek the Court's approval of a proposed disposition of assets and final accounting. The final accounting shall incorporate the payments made to any Claimants pursuant to the Plan, as set forth in any verifications provided under Par. 3, above. Following approval of the proposed disposition of assets and final accounting, the trustee shall distribute the estate assets to Claimants in the order of priority and classification as set forth in this Plan, less any Plan payments received by the Claimants as set forth in the verification information supplied to the Liquidating Trustee. After distributions have been made, the Trustee may move to close this Case.

8. Modification. The Liquidating Trustee, or any party in interest, may move the Court for an order modifying or supplementing the terms or language of this article as may be necessary to fulfill the goals and purposes of this Liquidation Provision.

**9.** Other Relief. Nothing herein shall preclude any party from seeking additional or alternative relief, including relief from stay and abandonment, by motion to the Court. Notice of any such motion shall be provided to the Liquidating Trustee in addition to and in accordance with the notice prescribed by the Court or applicable Federal Rules of Bankruptcy Procedure.

## ARTICLE VI. RETENTION OF LIEN RIGHTS BY SECURED PARTIES

The Secured Creditor set forth in Classes III, IV, V, VI, VII, VIII, IX, X, XI retain their mortgages, chattel mortgages, liens, and rights on said property until paid in full.

### ARTICLE VII.  CLASSES IMPAIRED BY THE PLAN

The following Classes are impaired in this Plan:

Classes III, IV, V, VI, VII, VIII, IX, X, XI.

### ARTICLE VIII.  ASSUMPTION OF EXECUTORY CONTRACTS AND LEASES

The following executory contracts and unexpired leases are hereby assumed for the purpose of this Plan:

See Disclosure Statement for any leases/also insert under rejected lease.

### ARTICLE IX.  COMPENSATION OF PROFESSIONALS

No compensation has been paid or promised by the Debtor or to the Debtor's knowledge of any entity for services, costs or expenses associated with this case except the attorney's fees and administrative costs which will be paid pursuant to the Plan as follows:

1.    The estimated costs and fees of PITTMAN & PITTMAN LAW OFFICES, LLC, by the Debtor's Attorneys, Galen W. Pittman, Greg P. Pittman, & Wade M. Pittman, are in the approximate amount of $75,000.00.  All compensation and fees shall be paid only upon approval of the Bankruptcy Court in this matter. This is an estimate of attorney's fees for administrative expenses and could certainly be higher than set forth herein. This does not include any accountants or any other fees other than the attorneys'. All compensation set forth in this paragraph is subject to the approval of the Court.

2.    Compensation for feasibility expert (Approximately $2,000.00) (only if necessary)

### ARTICLE X.  ADDITIONAL PROVISIONS APPLICABLE TO ALL CASES

14

1.      The payments, distributions and other treatments provided in respect to each allowed claim under this Plan shall be in the complete satisfaction, discharge and release of such allowed claim.

2.      Notwithstanding any other provision of the Plan specifying a date or time or payment or distribution of the consideration hereunder, payments and distributions in respect to any claim which at any date or any time are disputed, unliquidated or contingent, shall not be made until such claim or interest shall be an allowed claim.

## ARTICLE XI. AMENDMENTS AND WAIVERS

Except as otherwise specifically set forth in this Plan, any term of the Plan can be amended and any term of the Plan may be waived, either generally or in a particular incident or either retroactively or respectively, upon compliance with provisions relating to a holder of a Plan debt.  Holders of a Plan debt may amend, with concurrence of the Debtor, or waive compliance with any term or condition of the Plan relating to a respective holder.

## ARTICLE XII.  DISCHARGE

Upon the substantial consummation of the Plan and completion of the payments Debtor may apply to the Court for a discharge of the Claims provided for in those classes.  Until the completion of the payments described in this paragraph, creditors shall be enjoined through the confirmation order from taking any action to collect on their claims, provided however, that this provision shall not prevent any holder of any claim from taking any action to enforce the terms of this Plan or to enforce any debt or security interest preserved or provided for in this Plan; and provide further that creditors of the Debtor whose claims are held to be non-dischargeable pursuant to Code § 523 may seek to collect upon such Claims from property of their Debtor that is not property of the estate.

15

The Debtor's discharge of debts pursuant to this Plan shall not be effective until substantial confirmation of the Plan and completion of the payments described above. Should those Plan payments not be made, the Debtor, the Trustee, or any other party in interest shall retain the ability to move the Court to convert this Case to one under Chapter 7 of the Code, or to dismiss this case, and the entry of the Confirmation Order shall not be deemed "a discharge ... under section 1141 of title 11 within the meaning of Code§ 727(a)(8).

## ARTICLE XIII. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of the Chapter 11 case pursuant to and for the provisions set forth in Section 1127 and 1142 of the Bankruptcy Code as follows:

1.    To determine the allowance or disallowance of claims and interests.

2.    To fix allowance of compensation and other administrative expenses.

3.    To retain and determine any disputes arising under or relating to the Plan or arising under or relating to the Chapter 11 reorganization case.

4.    To enforce all discharged provisions of the Plan.

5.    To make such further orders and directions pursuant to 11 U.S.C. section 1127 and 1142 as may be necessary or appropriate.

## ARTICLE XIV. CHAPTER 11 QUARTERLY FEES

All quarterly fees payable under 28 U.S.C. 1930 shall be paid on or before the effective date of the Plan, as required by 11 U.S.C. 1129(a)(12).   The reorganized Debtor shall continue to file quarterly fee statements and pay quarterly fees when due until this case is converted, dismissed or closed.  The Bankruptcy Court shall retain jurisdiction necessary to enforce the provisions of this paragraph.

## ARTICLE XV.

16

All payments due under the Plan shall commence 30 days after Court enters the

Confirmation Order (signed) of the Chapter 11 Plan.

Dated this __3__ day of ~~March~~, 2018, at La Crosse, Wisconsin.

**PITTMAN & PITTMAN LAW OFFICES, LLC**

By:     **s/Galen W. Pittman**
        **Galen W. Pittman**
        **Attorney No. 1010058**
        **Attorney for Debtor**
        **712 Main**
        **La Crosse, WI 54601**
        **(608) 784-0841**

**RECAP**
**MONTHLY**

| | |
|---|---|
| Attorney's fees (Milk Assignment) - | $1,500.00 |
| BMO Harris - | $18,243.33 |
| CCC - | $3,657.01 |
| Stearns - | $462.77 |
| Stearns - | $243.35 |
| Stearns - | $1,192.46 |
| Stearns - | $268.47 |
| Stearns - | $1,419.57 |
| DLL Finance - | $3,436.35 |
| Agri Credit - | $327.62 |
| *Unsecured (1st Year) - | $4,593.14 |
| TOTALS = | $35,254.07 |

**ANNUAL**

| | |
|---|---|
| *Unsecured creditors  (1st Year) | $10,000.00 |

*See Amended Plan for Additional Years

18