UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:  Case No.: 16-13719-11

SCHROEDER BROTHERS FARMS
OF CAMP DOUGLAS LLP,

Debtor.

## MEMORANDUM DECISION

Schroeder Brothers Farms of Camp Douglas LLP ("Debtor") filed a Chapter 11 petition on November 2, 2016. The Court confirmed the Debtor's Plan on June 20, 2018. The matters here are the Motion by the Official Committee of Unsecured Creditors for Appointment of Liquidating Trustee (the "Motion") and Debtor's Motion to Convert to Chapter 12.

## BACKGROUND

The Court confirmed the Debtor's Plan. Article XIII of the Plan is entitled "Liquidation Provision." It requires the Debtor, on the 15th day of each month, to provide to the Committee written verification it has made the required Plan payments for the preceding month. If the Debtor defaults, the Committee could provide written notice to the Debtor of any such default. The Debtor then has thirty days to cure and provide written verification of the cure. Failure to cure within thirty days "is grounds for the appointment of a Liquidating Trustee."

In August 2018, the Debtor and Committee exchanged emails. On August 3, the Debtor emailed the Committee stating the milk assignment was "very very very far away" from the amounts necessary to make monthly

payments under the Plan. The Debtor stated "this is the time to name a liquidating agent" under the Plan.

The Debtor then appears to have backtracked on August 7. The Debtor suggested it was "working to raise funds to make the payment for July of 2018." The Committee responded on August 16 confirming the notice of default. The Committee informed the Debtor of its intent to move for the appointment of a Liquidating Trustee if the Debtor failed to cure the default within thirty days as required under the Plan. Debtor failed to cure within thirty days. It is unknown what events, if any, occurred between August 2018 and the filing of the Motion.

The Motion and Proposed Order includes a ten percent carve-out provision. The Motion provides that no less than ten percent of aggregate gross sale proceeds of assets sold by the Liquidating Trustee must be allocated for payment of allowed administrative expenses and unsecured claims. If gross sale proceeds equal or exceed the sum of secured claims and the carve-out amount, then the carve-out provision will not apply.

Debtor objects to the Motion for Appointment of Liquidating Trustee. It asserts that since August 2018, the value of the encumbered real property, equipment, and cattle has declined. Debtor has proposed no sales within the intervening months. Debtor argues any sale of assets would cause capital gains taxes. Any sale is likely insufficient to provide for capital gains (the Debtor estimates they will total "well over $500,000.00"), the Liquidating Trustee's fees, debtor's attorney fees of $75,000.00, and the Committee's attorney fees of

$10,000.00. The Disclosure Statement acknowledges the possibility of capital gains and that it may impact the partners of the Debtor.

The Debtor concedes it was ineligible to be a debtor under chapter 12 when it filed its' petition. The Debtor now asserts its total debts are below $4 million, making it eligible for chapter 12. The Debtor seeks to convert to chapter 12 to capitalize on what it refers to as the "Grassley Law"[1] allowing it to treat certain capital gains taxes as unsecured claims. According to the Debtor, without a conversion, capital gains taxes would consume any proceeds of the sale and render the estate administratively insolvent.

Potential capital gains taxes are a non-issue according to the Committee. The Debtor is an LLP. LLPs are pass-through entities for tax purposes. The partners, and *not* the partnership, are liable for any taxes arising from the sale of assets.

The Debtor asserts it is eligible to elect to be taxed as a corporation under IRS Form 8832. If an election were made, Debtor says that under chapter 12 the corporation's taxes would be discharged as an unsecured claim. According to the Debtor, the "best approach" is to deny the Motion for Appointment of Liquidating Trustee, allow the conversion to chapter 12, and confirm a chapter 12 plan incorporating liquidation provisions.

The Committee replies the Debtor is ineligible to convert to chapter 12 because it was ineligible when it filed its' petition. The Committee contends post-petition changes in amount of debt do not affect eligibility. And the

---

[1] 11 U.S.C. § 1232.

Committee argues there is no equitable ground on which the Court should convert the case.

BMO Harris Bank N.A., the primary secured creditor, joins and incorporates the Committee's objection to the Motion to Convert. BMO Harris argues the proposed conversion is prohibited. Even if allowed by the Code, such a conversion is not equitable under section 1112(d)(3). BMO Harris contends the Debtor has no realistic probability of successfully reorganizing. Creditors negotiated the Liquidation Provision in the Plan with this "very scenario" in mind.

If the Motion is granted, the United States Trustee does not objection to the Court making the determination of the person appointed as the Liquidating Trustee.

### DISCUSSION

A. <u>The Motion to Convert</u>.

A chapter 11 case "may not be converted to a case under another chapter of [title 11] unless the debtor may be a debtor under such chapter." 11 U.S.C. § 1112(f). "Only a family farmer or family fisherman with regular income may be a debtor under chapter 12." *Id.* § 109(f). To be a "family farmer," one's aggregate debt limits may not exceed $4,411,400.00 on the date the case is filed. *Id.* § 101(18B).

"[A] debtor's petition date is not altered by conversion." *Campbell v. Bonney (In re Campbell)*, 313 B.R. 871, 874 (B.A.P. 10th Cir. 2004). Conversion of a case from one chapter to another "constitutes an order for relief under the

4

chapter to which the case is converted, but, except as provided in [sections 348(b) and (c)], does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). Case law and the Code make clear the original petition date is the date for measuring the debtor's eligibility to be a debtor under a given chapter. *See, e.g., In re Ash*, 539 B.R. 807, 810 (Bankr. E.D. Tenn. 2015).

The Debtor is not a "family farmer." Its debt exceeded the statutory limit when it filed its' petition. In its Disclosure Statement, the Debtor concedes this. *See* ECF no. 158 at 7 ("The Chapter 11 was necessary because [the] debt load exceeded the limits of a Chapter 12."). Conversion does not change the date from which the Court determines eligibility to convert. Thus, under the facts and clear language of the statute, the Debtor is not eligible to convert to Chapter 12.

B. <u>Tax Status Of and Election By The Debtor</u>.

Partnerships, for purposes of taxation, are "pass-through entities." A partnership files an information return, but the partnership itself is not responsible for taxable gains and losses. Gains and losses pass through to the partners themselves. 26 U.S.C. § 701; *see also* IRS Form 1065.

A partnership's bankruptcy filing does not alter its tax status. "A partnership is recognized as an entity separate from the partners in bankruptcy proceedings, but not in income taxation." *Jennings v. Comm'r of Internal Revenue*, 110 F.2d 945, 946 (5th Cir. 1940). As the Bankruptcy Court for the Eastern District of Wisconsin noted:

5

> Partnership income continues to be taxed as though a bankruptcy case had not been commenced. For purposes of federal income tax, the commencement of a bankruptcy case by either a partner or a partnership does not alter the taxpayer status of a partnership. Section 1399 of the Internal Revenue Code provides the following: "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under Title 11 of the United States Code." 26 U.S.C. § 1399.

*Kiesner v. IRS (In re Kiesner)*, 194 B.R. 452, 458 (Bankr. E.D. Wis. 1996).

An "eligible entity" can to elect to be treated, for federal tax purposes, as a corporation, partnership, or an entity disregarded as separate from its owner. Eligible entities include domestic partnerships. *See* IRS Form 8832 at 5. Absent an election, a partnership is taxed as a partnership. An entity qualifies to change its election under certain circumstances, including if it has not filed an entity election. *See* IRS Form 8832 at 1.[2]

Here, the Tax Code would permit the Debtor to elect to be treated, for federal tax purposes, as a corporation. The Debtor is a partnership. It never made an initial election. It has thus been taxed as a partnership. The bankruptcy filing does not impact the Debtor's tax status. The Debtor has not made an initial election. It maintains making such an election would be beneficial.

While the election may benefit the partners of the Debtor, the question is whether it benefits the Debtor, its' estate and its' creditors. As a result, the

---

2 For a step-by-step chart on applying Form 8832, *see* Internal Revenue Serv., Overview of Entity Classification Regulations, https://www.irs.gov/pub/int_practice_units/ ore_c_19_02_01.pdf (last updated Sept. 24, 2017).

6

Court must decide whether a change in election violates the Bankruptcy Code or Plan.

At issue is whether the change in election violates the absolute priority rule. While the absolute priority rule usually comes up in a cramdown analysis, its application remains in force throughout the life of a plan. The absolute priority rule is codified in section 1129(b)(2)(B). It provides that owners of or those holding an interest in a debtor will not receive or retain under the plan any property because of that interest unless all general unsecured claims are paid in full. 11 U.S.C. § 1129(b)(2)(B)(i)–(ii).

The absolute priority rule is a mainstay of chapter 11, with roots tracing back to the 1800s. The fundamental principle underlying the absolute priority rule is to ensure the plan is "fair and equitable." The absolute priority rule prohibits "the bankruptcy court from approving a plan that gives the holder of a claim *anything at all* unless all objecting classes senior to him have been paid in full." *In re Perez*, 30 F.3d 1209, 1214 (9th Cir. 1994) (emphasis added). The rule serves to address "the danger inherent in any reorganization plan . . . that the plan will simply turn out to be too good a deal for the debtor's owners." *Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 444–45 (1999).

In effect the proposed tax election violates the absolute priority rule. It is not fair and equitable. It benefits the partners of the LLP to the detriment of creditors. It shifts funds from creditors to the taxing authorities. It would dilute the class of unsecured creditors. Since the Debtor filed a petition in November

2016, the partners have retained the benefit of favorable tax treatment through any depreciation or other losses. The partners seek to effect a change in the tax treatment of the LLP, saddling the Debtor with substantial estimated capital gains taxes. In other words, the partners would receive a tax benefit through favorable tax treatment, and would shift the unfavorable treatment to the detriment of creditors. The absolute priority rule is designed to prevent such an abuse of the Code.

Neither the Disclosure Statement nor Plan includes any discussion about an election to be taxed as a corporation. Article XII of the Disclosure Statement details the tax consequences of the Plan. "There is a possibility that various transfers and transactions contemplated by the Plan would result in a *reduction* of certain tax attributes . . . including but not limited to . . . capital gains liability" (emphasis added).

At the time of confirmation, the Debtor could discuss the treatment of capital gains taxes and a possible election. The Disclosure Statement and Plan both include the Liquidation Provision. Thus, the Debtor knew that upon default, a Liquidating Trustee could be appointed and assets sold. There is no unfair surprise to the Debtor, but there is unfair surprise to creditors. Creditors acted relying on the Disclosure Statement and Plan, which do not include a change in tax treatment. Any election to be taxed as a corporation should have occurred prepetition or at least preconfirmation.

It is troubling that the Debtor seeks to change its election to its *own* detriment and to that of its creditors. The two purposes underlying the Code

are the Debtor's fresh start and the repayment of creditors. The Debtor electing to be taxed as a corporation accomplishes neither. It burdens the Debtor with potentially substantial capital gains taxes and reduces payments to creditors. It merely allows the partners to shift unfavorable tax treatment elsewhere. While the partners of the Debtor could make this argument, the Debtor itself may not.

The proposed tax election is not in the best interests of the Debtor, estate, or creditors. It is, therefore, prohibited.

C. <u>The Motion for Appointment of Liquidating Trustee</u>.

There is a paucity of case law about the appointment of a Chapter 11 trustee. Much of the case law arises under section 1104(a). That section authorizes a court to appoint a trustee "for cause, including fraud, dishonesty, incompetence, or mismanagement" or "if such appointment is in the interests of creditors . . . ." 11 U.S.C. § 1104(a)(1)–(2). A court may appoint a trustee under section 1104(a) only after commencement of the case and before confirmation of the plan. Here, the Court has confirmed a plan. Thus, the Court cannot grant relief under section 1104. Still, that case law provides guidance on factors that may be useful in determining whether to appoint the requested Liquidating Trustee.

In the context of section 1104, the appointment of a trustee in a chapter 11 case is an "extraordinary remedy." *In re 4 C Solutions, Inc.*, 289 B.R. 354, 370 (Bankr. C.D. Ill. 2003). There is a "strong presumption" the debtor should remain in possession and control of its assets and business. *Id.* (citation

omitted). "The appointment of a trustee should be the exception, rather than the rule." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989) (citations omitted).

The decision to appoint a trustee "must be made on a case-by-case basis." *4 C Solutions, Inc.*, 289 B.R. at 370 (citation omitted). "Since the appointment of a trustee will necessarily cause additional expense for the estate, the court must consider the financial cost of appointing a trustee." *Id.* The movant must demonstrate cause to appoint a trustee by clear and convincing evidence. *In re Waterworks, Inc.*, 538 B.R. 445, 464–65 (Bankr. N.D. Ill. 2015). Such a decision is within the court's discretion. *In re G–I Holdings, Inc.*, 385 F.3d 313, 318 (3d Cir. 2004).

Some courts use a multi-factor test to determine whether the appointment of a trustee is in the best interests of creditors. As the Bankruptcy Court for the Southern District of New York stated:

> With respect to whether a trustee should be appointed [if in the best interests of creditors], courts "eschew rigid absolutes and look [ ] to the practical realities and necessities." Among the factors considered are: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (citations omitted).

Section 1123 authorizes provisions in a plan permitting the appointment of a trustee. The Plan here specifically provides for the appointment. The Plan

10

and Code provide for continued jurisdiction to enforce the confirmed plan. Section 105 codifies the Court's power to issue orders "necessary or appropriate to carry out the provisions" of Title 11, including implementation and enforcement of the confirmed plan. So this case is different than those cases relying on Section 1104.

Here the Plan authorizes the appointment. The Debtor defaulted under the Plan. It has not made required payments under the Plan. The Committee sent notice of the default. The Debtor failed to cure within thirty days. The Plan explicitly provides that the failure to cure "is grounds for the appointment of a Liquidating Trustee."

Enforcing the terms and provisions of the Plan satisfies the parties' expectations. Presumably, the Committee and BMO Harris negotiated the provision for a Liquidating Trustee out of concern for the likelihood of default and potential for waste to occur. Indeed, the Plan states the Liquidation Provision "is intended to provide an orderly and predictable process for liquidation of the Debtor's assets in the event the Debtor defaults under the Plan within the first 24 months following confirmation. The [Liquidation] Provision is intended to protect the interests of all creditors while affording the Debtor a reasonable opportunity to reorganize . . . ."

The practical realities of the Debtor's situation also support appointment of a Liquidating Trustee. The Debtor cannot convert to chapter 12. The Debtor does not have a realistic chance at successfully reorganizing. The Debtor has not made payments under the Plan. Even the Debtor's hypothetical chapter 12

11

plan would have included liquidation provisions. And the Debtor's proposed tax election demonstrates a goal to benefit its partners to the detriment of creditors.

The proposed ten percent carve-out provision does not result in any double fees or double dipping for the Liquidating Trustee. The Trustee will receive funds only because of time spent and not a percentage of sale proceeds in addition to her time. Th Debtor's suggestion it should make a tax election that would benefit its partners and dilute the distribution to unsecured creditors demonstrates that its' focus is not on the best interests of creditors. As a result, it confirms the Debtor should not remain in possession and control of its assets.

### Conclusion

For the reasons above, the Debtor is not eligible to convert to chapter 12 and the Motion to Convert is denied. The Debtor and its partners are enjoined from electing to be taxed as anything besides a partnership. The Motion to Appoint a Liquidating Trustee is granted.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Separate orders consistent with this decision will be entered.

Dated: May 30, 2019

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge